### McCARLEY v. GLENN-LOWRY MFG. CO.

1. JURY VIEWING PREMISES.—There was no error by trial Judge in declining to send jury to view machinery where plaintiff's intestate was injured under facts in this case.

2. EVIDENCE.—It was proper here to admit evidence as to the condition of oil on machinery one and one-half hours after accident, under allegation that master had sent servant to oil machinery, the oil can having been found at place of accident.

3. MOTION FOR NONSUIT made on ground that defendant was not negligent, that plaintiff was negligent, and that plaintiff was guilty of contributory negligence was properly overruled under proof here.

4. EVIDENCE.—On cross-examination of defendant's witness, question that if specifications sent out by dealer in machinery called for a special sized rope, would that size be necessary? is relevant here, as evidence of the specifications had been put in by plaintiff.

5. IBID.—MASTER AND SERVANT.—If there be no proof that servant knew of defects in machinery under his care, it is not error to refuse to instruct jury principles of law applicable to injuries received by servant from defects in machinery which it is his duty to report to master.

6. CHARGE.—Trial Judge, in modifying a request to instruct jury as to assumption of risks, did not withdraw from jury question of servant's negligence and direct attention of jury to contributory negligence, did not confuse contributory negligence and assumption of risks, nor instruct jury that in order to find negligence in servant they must find negligence in master, even though he had furnished a safe place to work.

7. IBID.—MASTER AND SERVANT.—It is not error to modify request, "It is not duty of master to warn servant of known and obvious dangers," by adding, "but servant has the right to assume that the appliances are reasonably safe."

8. MASTER AND SERVANT—RISKS—JURY.—It is for jury to say whether the servant assumes the risks of defects in machinery by continuing in employment of master after knowledge of defects.

9. PRESUMPTION ceases upon admission of evidence tending to establish facts which negative the presumption.

10. REFUSAL OF NEW TRIAL because verdict was unsupported by evidence held not error of law under proof in this case.

Before MEMMINGER, J., Newberry, December, 1905. Affirmed.

Action by Louise A. McCarley, administratrix, against Glenn-Lowry Mfg. Co. From judgment for plaintiff, defendant appeals.

*Messrs. Mordecai & Gadsden, Johnstone & Cromer* and *Mower & Bynum,* for appellant. *Messrs. Johnstone & Cromer* and *Mower & Bynum,* for appellant, cite: *Cross-examination as to size of rope necessary does not come within rules of expert evidence:* 59 S. C., 311; 8 Ency. P. & P., 770. *Master is not required to warn servant of known danger:* 55 S. C., 483; 4 Cur. L., 556, 557; Wood's L. & M. & S., 2d, 697, 713, 758. 761; 55 S. C., 100; 72 S. C., 97; 135 U. S., 570; 152 U. S., 155. *Servant assumes risk in performing his work in a dangerous place where master provides another reasonably safe place:* 101 N. W., 300; 105 Ill. App., 92; 128 Fed. R., 534; 27 S. C., 71; 108 Fed. R., 747; 38 S. E., 350; 61 S. C., 478; 4 Cur. L., 568, 569; 34 S. C., 292; 161 Mass., 138; 26 S. C., 496 *Servant*

*must overcome by proof presumption of want of negligence:*
17 Pac., 484; 14 S. C., 432; Woods L. of M. & S., 2 ed.,
708, 769. *Trial Judge should pass on motion for nonsuit
on ground that plaintiff's evidence conclusively showed
contributory negligence:* 46 S. C., 203; 23 S. C., 289; 38
S. C., 365; 58 S. C., 495. *Servant cannot recover for in-
juries received by operating machinery known to him to be
defective, but not reported by him to master:* 91 Pa., 185;
20 Ency., 143, 90. *Master is not liable where servant is
charged with examining the machinery:* 34 S. C., 211; 20
Ency., 120.

*Messrs. Sheppards, Grier & Park, Hunt, Hunt & Hunter,*
and *Schumpert & Holloway,* contra.

*Messrs. Grier & Park* cite: *Inspection of premises by
jury is within discretion of trial Judge and no abuse is
shown:* Code 1902, 2950; 66 S. C., 315; 56 S. C., 29; 60
S. C., 296; 6 Ency. P. & P., 819. *Evidence as to condition
of oil after accident properly admitted:* 47 S. C., 73. *Ad-
mission of immaterial evidence is harmless error and not
ground of appeal:* 43 S. C., 383; 55 S. C., 568; 51 S. C.,
480; 52 S. C., 453; 50 S. C., 136; 52 S. C., 1, 323; 14 S.
C., 553; 24 S. C., 340; 34 S. C., 35; 54 S. C., 335. *As to
right of cross-examination:* 16 S. C., 556; 56 S. C., 533; 34
S. C., 35; 30 S. C., 44; 55 S. C., 580. *Rule as to granting
nonsuit:* 19 S. C., 32; 21 S. C., 556; 57 S. C., 249; 60 S.
C., 485. *Nonsuit should not be granted on ground of con-
tributory negligence of plaintiff:* 19 S. C., 241; 25 S. C.,
128; 42 S. C., 462; 62 S. C., 136; 46 S. C., 203; 23 S. C.,
289. *Principles governing in construing a charge:* 47 S. C.,
74; 55 S. C., 568; 58 S. C., 94; 47 S. C., 25, 156; 54 S. C.,
92. *Judge is not bound to charge a request if it is covered
in general charge:* 46 S. C., 218; 45 S. C., 146, 189; 48
S. C., 368; 51 S. C., 306; 49 S. C., 285. *Duty of master
in respect to machinery, ways, means and appliances:* 70
S. C., 493; 63 S. C., 559; 70 S. C., 476; 59 S. C., 171; 68

S. C., 83; 18 S. C., 262, 275; 52 S. C., 438; 60 S. C., 9; 23 S. C., 528; 69 S. C., 392; 22 S. C., 557; 37 S. C., 42; 25 S. C., 446; 71 S. C., 61, 8.

*Messrs. Hunt, Hunt & Hunter* and *Schumpert & Holloway*, cite: *Sending jury to visit premises is discretionary with trial Judge:* Code 1902, 2950; 66 S. C., 302. *Evidence as to condition of the scene of a tragedy after accident is competent:* 47 S. C., 73. *Nonsuit should not be granted if there be scintilla of evidence:* 45 S. C., 283; 46 S. C., 104. *Question of contributory negligence is for jury:* 46 S. C., 203; 48 S. C., 190; 53 S. C., 358; 73 S. C., 159; 60 S. C., 9. *Whether servant is negligent in handling machinery known to him to be defective, is for jury:* 22 Ency., 122; 64 S. C., 215; 40 S. C., 104; 48 S. C., 190. *It is duty of master to make examination for latent defects:* 20 Ency., 122, 123; 40 S. C., 104; 48 S. C., 190; 64 S. C., 215; 70 S. C., 316; 72 S. C., 398; 170 U. S., 671; 66 S. C., 487. *Remaining in employ of master after knowledge of defect is not assumption of risk:* 55 S. C., 101; 61 S. C., 477. *Error in isolated part of charge may be cured by construction of whole charge:* 20 S. C., 270; 22 S. C., 483, 191; 23 S. C., 199; 43 S. C., 67; 54 S. C., 90; 51 S. C., 312. *The danger which servant assumes must be such as a prudent man would know:* 20 Ency., 114, 115, 146; 46 S. C., 547. *Duty of servant to know open dangers does not conflict with right of servant to presume master has furnished safe place:* 66 S. C., 482; 170 U. S., 671. *Whether remaining in service after knowledge of defect is negligence is for the jury:* 72 S. C., 348; 52 S. C., 438; 18 S. C., 275; 51 S. C., 222. *That machinery was defective may sometimes be shown by describing the appliances and the nature of the accident:* 69 S. C., 530; 164 Mass., 42; 179 U. S., 658; 166 U. S., 617; 59 L. R. A., 787.

November 23, 1906. The opinion of the Court was delivered by

Mr. Chief Justice Pope.    Matthew W. McCarley was employed by the defendant, the Glenn-Lowry Manufacturing Co., to superintend its ginnery of cotton.    On the 7th day of October, 1904, the said McCarley was wounded while in the employ of the defendant in its said ginnery and on the 14th day of said month and year he died.

The complaint sets forth that he left surviving him as his heirs at law and next of kin, his widow, Louise A. McCarley, and her three children, Herman, John and Moselle.    Letters of administration on his estate were granted by the probate court of the county of Newberry to her and as such administratrix she brings this suit for the benefit of herself and three above named children of the said McCarley, deceased, under what is known as Lord Campbell's Act, in and for the sum of $35,000.    That the defendant conducts its business of ginning seed cotton a short distance from its general manufacturing plant, and is operated by electricity furnished from the power plant which operates its general manufacturing plant.    That as a part of said ginnery a cotton press was used for the pressing of lint cotton into bales.    This press was operated by electricity furnished from the power plant of the said defendant.    That the said ginnery is situate in a building consisting of two stories and the said press is so constructed that the lint cotton is placed into the same from the second story of the ginnery, where the same is ginned and passes down into the body of the said press from the floor of the second story of said building into the first story thereof where is situated the machinery by which the said press is operated and from whence the block used to press said cotton is forced upward to the second story, where the cotton is taken from the said press in bales.    That on both sides of the said cotton press in the second story of said ginnery are and were at the time hereinbefore mentioned large and heavy doors both of which open on hinges and swing downward to the floor of the said second story when open and upward to the frame of the said cotton press when closed.    To both of these doors is fas-

tened a rope which passes over and through a pulley or pulleys suspended from the frame of the said press downward along the frame of the said press through the floor of the second story of said ginnery into the first story thereof where, suspended from the said rope by means of another pulley, is a large weight, block or box filled with iron, rock or other heavy material weighing about three hundred pounds and by means of this weight, block or box the said doors are so balanced as to be more readily and easily opened and closed. That the said weight, block or box, suspended from the said rope as aforesaid, was and is over and above the machinery by which the said press was operated, and was by the said defendant so negligently, carelessly and recklessly left unprotected, exposed and unguarded to the great danger of the employees of the said defendant who had to work and perform labor in and about the said machinery. That the rope by which the said weight, block or box aforesaid was suspended, was negligently, carelessly and recklessly allowed by the said defendant to become worn, old, unsafe and insufficient to carry the said weight, block or box with safety. That on the morning of the accident, to wit: the 7th of October, 1904, the machinery of the said ginnery of the defendant did not work and operate as it ought to have worked, and this fact was brought to the attention of the defendant, who, after an inspection of the said machinery, instructed and directed the said Matthew W. McCarley to oil the said machinery and keep the same properly oiled, and while he was so engaged in the performance of the duty imposed upon him by the defendant, and was acting directly under the instructions of the defendant, and while oiling or attempting to oil the said machinery by which the said press was and is operated, the rope aforesaid by which the said heavy weight, block or box was suspended, suddenly and without warning broke and the said weight was violently thrown and dropped downward along the frame of said press, striking the said Matthew W. McCarley on his head and shoulders and ter-

ribly and horribly crushing, breaking and mashing his head and thereby seriously and fatally injuring him, from which said injury he died on the 14th of October, 1904.

That the said defendant was further negligent in that the said rope was too small and too weak to carry the said block or box with safety.    That the said defendant was further negligent, in that the said rope was not made of material sufficiently safe for the carrying of said block, box or weight continuously from day to day with safety and security to the employees of the said defendant who were required to work in and about the said machinery.    That the said defendant was further negligent in that the pulleys over which the said rope passes were not designed, planned and made to carry a rope of the kind and size used by the said company on this occasion.    That the said defendant was further negligent in requiring the said McCarley, whom it knew to be inexperienced, unlearned and unused to machinery, to oil the said machinery, failing to warn him of the dangers incident thereto.    That on account of the negligence, carelessness and recklessness as above set forth and alleged, the plaintiff, suing for herself and for the children of the said McCarley, alleges that they have been damaged in the sum of $35,000, and judgment is demanded therefor.

In the answer of the defendant, the death of Matthew W. McCarley is admitted.    It also admits that administration had been granted the plaintiff.    It admits its corporate character, and that, amongst other things, it conducts the business of ginning seed cotton.    It also admits the location of its plant.    It denies that on the 7th of October, 1904, and for about ten days prior thereto, the said McCarley, deceased, was employed by the defendant company to do and perform certain work, labor and duties in and about its ginnery.    It denies so much of the seventh paragraph of the complaint as alleges that the box, as alleged by the plaintiff, was filled with iron, rock or other heavy substance, and was of the weight of 300 pounds.    It denies the other allegations of the complaint, and for further answer says that

at the time the said Matthew W. McCarley sustained the injury alleged in the complaint he was in charge of the machinery therein described as an employee of the defendant, and says he was familiar with the conditions and workings of said machinery, and assumed the risks incident to the said employment; and for further answer the defendant says that the death of said Matthew W. McCarley was the result of his own negligence, in that having been some time in charge of the machinery described in the complaint, and being familiar with its condition and workings, he was at the time of the injury at a place where his duties did not require him to be, and where in the ordinary course of ginning operations he knew it was dangerous for him to be, because it was the time, or about the time, for the weight alleged to have caused the injury, to descend, and that one standing at that place, was liable to serious injury even when the machinery was in perfect condition, and that he was charged with the duties of keeping the machinery in good condition, of observing and detecting and if necessary, reporting any defects therein.

And for further answer, the defendant says that, for the purpose of this defense alone, it alleges that the death of the said McCarley was the result of a want of ordinary care on his part as a proximate cause thereof, in that he was familiar with machinery described in the complaint, he knew that it was the time, or about the time, for the weight described in the complaint, to descend, and that it was dangerous for a person to stand under it when it was descending, and that he was standing under said weight though his duty did not require him to do so. The defendant, therefore, prays that the said complaint be dismissed with costs.

The case being thus at issue came on for trial on the 1st of December, 1905, before Judge Memminger and a jury. The trial lasted through December 5th, 1905. Both sides introduced testimony, and, after the charge of the presiding Judge, the jury returned a verdict for $16,000, for the plaintiff. Motion for a new trial was made thereafter,

which was refused.   After entry of judgment on the verdict the defendant appealed.

It now remains for this Court to pass upon these several grounds of appeal.

"I. Because, his Honor erred in refusing to allow the jury to view and inspect the premises and the machinery where the injury to plaintiff's intestate is alleged to have occurred."   The Circuit Judge evidently considered this to be within his discretion.   Section 2950 of the Code of Laws of South Carolina for 1902, is as follows:

"The jury in any case may, at the request of either party, be taken to view the place or premises in question, or any property, matter or thing relating to the controversy between the parties, when it appears to the Court that such is necessary to a just decision   *   *   *   ."   The defendant moved in this case that the jury be required to inspect defendant's ginnery, claiming that such an inspection would give to the jury a clearer view of the points at issue between the parties to this suit.   The plaintiff made no objection to this proposition, but the Circuit Judge held that it was not necessary, and assumed the responsibility for a refusal of the defendant's motion.

This matter in its different phases was several times presented to the Judge.   When the motion was first presented, he held it under advisement, but he finally decided that it did not appear to the Court that such view by the jury was necessary to a just decision.   Each side of the controversy presented diagrams of the machinery, and testimony was freely advanced by each side in explanation of such machinery.   Such being the case, we do not regard it as any abuse of discretion on the part of the Circuit Judge to so decide.   In *Bodie* v. *Ry. Co.,* 66 S. C., 302, 315, 44 S. E., 943, this Court decided, Mr. Justice Gary delivering the opinion: "It was wholly within the discretion of the presiding Judge whether he would send the jury to view the place where the injury occurred, and under the circumstances its discretion was properly exercised."

Judge Memminger, in reference to this motion, before the testimony began, said: "It seems to me that it would hardly be necessary at this stage. It may become apparent later on. The practice is not general to send juries to examine these things. It may appear during the course of the testimony that an examination would be proper. It would be very hard for me to say now that the jury should be sent off to examine that machinery. It is a very unusual proceeding." After testimony was in and on the renewal of this motion, the Court said: "I have considered that question carefully and have examined the statute and I have followed the testimony very closely, and I don't really think it is necessary. I will have to undertake the responsibility for not sendng the jury out there, because I don't think it is necessary for a determination of the case. It seems to me the testimony has been full and ample, and the jury are in possession of all the testimony for them to pass upon. In the exercise of my own discretion under the statute. I am going to refuse it."

The place where the machinery was located was about eighteen miles distant from the Court House. There had been some changes made, of course. There was an interval of more than a year between the time of the accident and the time when the inspection was requested. Under these circumstances, we must hold that there was no mistake made by the Circuit Judge. This exception is, therefore, overruled.

"II. Because his Honor erred in allowing the witness, W. A. Andrews, to testify as to the condition of the machinery, as to oiling an hour and a half after the alleged injury occurred; whereas, the testimony should have been restricted to the *res gestae* and the condition of the machinery at the time of the alleged accident." We cannot view this exception with favor. This witness viewed the machinery an hour or an hour and a half after the accident, no one was present at the time of the accident, there was no testimony that any change was made in

the machinery after the accident and before the witness viewed the same. Such being the case, we do not see why the testimony was not relevant and admissible. *The State v. Martin,* 47 S. C., 73, 25 S. E., 113, decided that a board with stains on it cut from the floor of the house a year after the homicide and after the house had been occupied by different families, was admissible in evidence. The length of time intervening between the stains made on the board and at the date of the testimony in regard thereto, might weaken the force but could not affect the competency of such evidence. So, too, in the matter of tracks—testimony in regard to the same is not confined to the time at which the tracks are made, the condition of the tracks is testified to and they are admitted in testimony. We think that Mr. Andrews should have been allowed to testify what the condition of the oil on the machinery was, whether it was recent in appearance or old, especially as the oil can was taken from the debris caused by the accident and the hat of the deceased was found nearby. This exception is overruled.

"III., IV., V. Because his Honor erred in refusing to entertain, consider or pass upon the defendant's motion for nonsuit, based on the ground that the evidence conclusively showed contributory negligence on the part of the plaintiff's intestate.

"Because his Honor erred in refusing defendant's motion for a nonsuit, based on the ground that the evidence does not disclose or prove negligence on the part of the defendant.

"Because his Honor erred in refusing defendant's motion for a nonsuit, based on the ground that the proof showed that the plaintiff's intestate was negligent and that negligence caused the injury which resulted in his death."

We will consider these three exceptions together. It is a delicate duty imposed by law upon a Circuit Judge to grant a nonsuit, and yet there are cases which justify it. In the third ground of appeal, contributory negligence as there set up related to the same appearing by the plaintiff's

case itself. We do not regard the testimony adduced by the plaintiff as sustaining the doctrine of contributory negligence. This exception is, therefore, overruled.

Nor do we regard the evidence as disclosing no negligence on the part of the defendant. The testimony as adduced left it as a vital question before the jury as to whether the defendant was guilty of negligence. It was a question for the jury and not for the Court. Exception four is, therefore, overruled.

In the fifth ground, his Honor committed no error in overruling the motion for a nonsuit, for it could not be held by the Circuit Judge that the plaintiff's intestate was so negligent as to deprive her of a right to submit the allegation of negligence for her intestate to the jury, and this being so, the Circuit Judge had no right to grant a nonsuit for this cause. This exception is overruled.

"VI. Because his Honor erred in overruling the defendant's objection to the following question propounded to the witness, John H. Wicker, viz: 'If, as a matter of fact, the specification sent out by the makers of the press called for a three-quarter inch rope, would you say that was necessary?' In that the question was, (1st) irrelevant; (2d) not based upon any testimony in the case; (3d) no such specifications were in evidence." We think that the testimony of the plaintiff's witness, L. Q. Buford, showed that the Gibbes Manufacturing Co. always used a three-quarter inch rope, and that such is the usual rope, therefore, the question was not irrelevant to the matter before the Court. Certainly this answer on a cross-examination was not so objectionable as to work any injury to the defendant. The question as to the size of the rope was testified to on both sides. Several witnesses for the plaintiff testified that the rope in use was a three-eighth or five-sixteenth inch, some said the size of a plough line, a cotton rope, some said it was made of jute of the size of one-half inch. Under these circumstances we do not regard the admission of testimony error. This exception is overruled.

26—75

"VII. Because his Honor erred in modifying defendant's eighth request to charge in this, that, after modifying it in other particulars, he added the words, 'unless the defendant was negligent in otherwise failing to discover such defect;' thereby erroneously instructing the jury, (1) that the servant charged with the duty of discovering and reporting defects in the machinery could recover in spite of his failure to report defects that he had actually discovered; (2) and that the servant could recover though he had assumed the risk of continuing to operate machinery that he knew to be defective, and whose defect he had not reported, though it was his duty to do so; (3) and that the servant could recover in spite of his contributory negligence in operating machinery he knew to be defective; (4) and that it was actionable negligence on the part of the defendant to fail to discover for the protection of the servant defects that the servant already knew, and that the defendant was relying upon the servant to report to it; (5) thereby depriving the defendant of the benefit of the said charge as made, without the addition of the modifying words complained of."

We cannot find in the case any testimony or proof of any facts leading to such an inference that the plaintiff knew of any defects as here referred to. The only defect that he knew of was reported to the master machinist and was by him corrected, and we do not see, therefore, that this exception raises any practical question. The Circuit Judge was proper in ruling in relation to the same. This exception is overruled.

"VIII. Because his Honor erred in modifying the defendant's thirteenth request to charge by adding the words, 'If the jury finds this to be negligence on his part contributing to his injury as a proximate cause thereof.' The error consisting, (1) in that the defendant was entitled to have his request charged without modification. (2) In that his Honor withdrew from the consideration of the jury the question whether the injury to the servant was not caused by his own negligence, as alleged in the

answer, and directed their attention conclusively to the question of contributory negligence, so far as this phase of the case is concerned.   (3) In that his Honor confused the questions of contributory negligence and assumption of risk.   (4) In that the words added by his Honor on the subject of contributory negligence warranted the inference on the part of the jury that in order to find that the servant had been negligent, they must also find that the master had been negligent, even though he had provided a safe and convenient place for the work."

The Judge's charge, as we read it, has given the jury his view of the law of negligence, contributory negligence and assumption of risk.   The Circuit Judge was not required by the law to do more than charge these several phases of the question involved in the request to charge in this case.

The defendant's thirteenth request to charge was as follows: "If the jury find that the Glenn-Lowry Manufacturing Co. provided a safe and convenient place for oiling and caring for the machinery in question, and that W. W. McCarley was familiar with the surroundings, but assumed the risk of oiling and caring for the machinery from an inconvenient and dangerous place, your verdict must be in favor of the defendant." The Judge charged the request, adding these words: "If the jury find this to be negligence on his part, contributing to his injury as a proximate cause thereof." The appellants suggest a consideration of this alleged error.

"(a) That the defendant was entitled to have this request charged without modification.   (b) In that his Honor withdrew from the consideration of the jury the question whether the injury to the servant was not caused by his own negligence, as alleged in the answer, and directed their attention exclusively to the question of contributory negligence, so far as this phase of the case is concerned.   (c) In that his Honor confused the questions of contributory negligence and assumption of risk.   (d) In that the words added by his Honor on the subject of contributory negli-

gence warranted the inference on the part of the jury that in order to find that the servant had been negligent, they must also find that the master had been negligent, even though he had provided a safe and convenient place for the work."

It is the duty of the Judge to meet the request to charge of either side either in his general or special charge to the jury. In this case Judge Memminger found it necessary in making a special charge to make it harmonious with his general charge as a whole. He had already defined negligence. In this matter he found it necessary to define contributory negligence. This he did in quoting the very language of this Court in the case of *Wofford* v. *Clifton Mills*, 72 S. C., 346. This great care on the part of the Circuit Judge is criticised. But we cannot agree that in this particular the presiding Judge was at all to be criticised. The Circuit Judge, as is complained of in the second sub-division, is not at fault. Nor do we find that he, as is complained of in the third sub-division, confused the questions of contributory negligence and assumption of risk, for he defined each separately in his general charge. This was sufficient. The fourth sub-division is without merit, it was not a necessary or a natural inference that in order to find that the servant had been negligent they must also find that the master had been negligent. This eighth exception is overruled.

"IX. Because his Honor erred in modifying the defendant's sixteenth request to charge. 'It is not the duty of the master to warn the servant of known and obvious dangers' by adding the words 'but the servant has the right to assume that the appliances are reasonably safe,' the error consisting:

(a) In that the defendant was entitled to have it charged without modification that 'it is not the duty of the master to warn the servant of known and obvious dangers.' (b) In that the modification has no proper application and is not responsive to the subject embraced in the request. (c) In that the modification nullified the request, by authorizing the inference on the part of the jury

that the servant has a right to assume that there is no danger where, as a matter of fact, the danger is known and obvious to him."

It is the law that it is the master's duty to furnish his servant with reasonably safe appliances. In *Roach* v. *Haile Gold Mining Co.,* 71 S. C., 81, 50 S. E., 453, it is said by this Court: "It is one of the primary duties resting upon the master to furnish safe and suitable appliances for his servant, and when a servant sustains injury from any defect in the machinery, there is *prima facie* evidence of negligence on the part of the master. The servant is not required to give notice to the master that the appliances are defective." The Circuit Judge had already charged the jury that the master was not bound as negligent when the servant *knew* of defects in the machinery furnished by the master. Under these well known facts, the Circuit Judge did not err as herein complained of. This exception is overruled in all its phases.

"X. Because his Honor erred in modifying defendant's seventeenth request as follows: 'If the machinery and appliances are obviously unsafe so as to charge the servant with knowledge thereof, and he, nevertheless, enters upon the work and is injured, he cannot recover against the master,' by adding the words, 'It is for the jury to say whether his continuing in the employment with such knowledge was negligence,' on these grounds: (a) In his Honor's failure to distinguish between negligence and assumption of risk; and in his charging on the subject of negligence; whereas, the request was directed to the question of assumption of risk. (b) In that the defendant was entitled to have this request charged without modification."

We do not see that his Honor failed to grasp the significance of appellant's question. He had charged that "where it affirmatively appears that he (the servant) did actually know of the features of the machine which he alleged constituted defects, and knew also of the danger which grew

out of them, and assumed the risk, he cannot recover; but whether the servant assumed the risk, as has often been decided, is ordinarily a question to be determined by the jury under all circumstances of the case." *Wofford* v. *Clifton Cotton Mills, supra.* It was a question for the jury, and the Circuit Judge so held. This exception is overruled.

"XI. Because his Honor erred in refusing to charge so much of defendant's nineteenth request to charge as was omitted in his charge, viz: The opening sentence of this request: 'The presumption is that the master has discharged his duty,' thereby depriving the defendant of the benefit of this well established and well recognized elementary principle of law applicable in this case." This presumption ceased the moment the master's duty became a question of fact contested stoutly on each side. Such a charge would have become confusing to the jury. The Circuit Judge, in his great care for a fair trial, had to eliminate any matter which no longer was practical. We overrule this exception.

"XII. Because his Honor erred in modifying defendant's twentieth request to charge, viz: 'If the servant is conscious of the danger, the fact that he for a moment forgets its existence and thereby sustains an injury, will not make the master liable,' by adding these words: 'If the jury find that he was thereby guilty of contributory negligence,' under these suggestions of error: (a) In that the defendant was entitled to have the request charged without modification. (b) In that his Honor failed to submit to the jury the question of negligence on the part of the servant as distingished from contributory negligence."

The defendant made no request that his Honor, in his charge, should distinguish negligence itself and contributory negligence. The Circuit Judge did not have his attention called to any such desire on the part of the defendant. His Honor defined each one. In contributory negligence he used the very language adopted by this Court. This ground of appeal must be overruled.

"XIII. Because his Honor refused to adopt defendant's twenty-first request, which was as follows: 'In order to entitle the servant to recover, he must overcome two presumptions; first, that the master has discharged his duty to him by providing suitable machinery and appliances for the business and in keeping them in condition; second, that he assumes the usual and ordinary hazards of the business;'· on these specifications of error: (a) In that the defendant was entitled to have the request charged without modification. (b) In that his Honor thereby deprived defendant of the benefit of these well recognized and well established principles of law, applicable in this case."

We think the Circuit Judge committed no error, as here alleged. Presumptions cease when the parties both introduce testimony tending to establish the facts which negative presumptions. His Honor sought to make and did make clear to the jury by his charge that the plaintiff could not recover in this case unless he, by his proofs, clearly established the negligence of the defendant as set out in the complaint. This exception must be overruled.

"XIV. Because his Honor erred in overruling the motion for a new trial based on the ground that the verdict was unsupported by the evidence, there being no evidence to support the verdict." We have carefully examined the testimony, and we are unable to say there was no testimony supporting the verdict. There was a conflict in the testimony as presented by each side to this controversy. Such being the case, it was for the jury to pass upon the same. The jury found the issues for the plaintiff. Therefore, we cannot interfere, and this exception is overruled.

"XV. Because his Honor erred in overruling the motion for a new trial on the ground that the verdict was unsupported by the evidence, and in basing his conclusion on the assumption that the testimony shows that the plaintiff was at the time of the injury in the discharge of the duties of his position; whereas, there was no evidence that the

duty of the servant required him to be under the box which is alleged to have injured him."

M. W. McCarley, under the testimony, was "boss" of the department of labor which he was called to control. There was no direct testimony that he was in the lower room of the ginnery applying oil to the machinery. But the inference was direct and palpable that he was injured while so engaged, and that the breakage of the small cord suspending the weight or box attached to the door of the press precipitated such box upon him while engaged in oiling the iron of the machinery, thus causing his death. M. W. McCarley was alone in that lower room. His oil can was found there in a mashed condition. The machinery appeared to have been freshly oiled. Testimony showed that the cord was too small, for it certainly was frasseled and was in that condition when broken. Testimony pro and con on these subjects was offered. The verdict of the jury was in favor of the plaintiff on these matters of controversy. The Circuit Judge refused to grant a new trial. We will not interfere with his conclusion. This exception must be overruled.

"XVI. Because his Honor erred in overruling the motion for a new trial on the ground that the verdict was unsupported by the evidence, and in basing his conclusion on the assumption, 'that the jury was warranted in finding from the testimony, that McCarley was oiling the machinery in accordance with instructions from defendant's machinist;' whereas, there was no testimony that McCarley was oiling the machinery under directions from defendant or any of its agents or officers." It is admitted that an agent of the defendant was engaged the morning of the accident, and sometime before the same, in arranging the machinery at the instance of McCarley. Some time after the machinery had been adjusted, McCarley took the oil can from the upper room of the ginnery down in the room of the ginnery on the ground floor thereof. It is purely an inference that from the testimony McCarley was oiling the machinery under the

direction of Mr. Herin of the mill force, who had been in consultation with McCarley on the subject of an improvement of the running of the machinery. It was this machinery McCarley was oiling. It was while so engaged, he was injured. Under these circumstances, it was no violent inference indulged by the Circuit Judge. We will not say that the Circuit Judge erred. This exception is overruled.

"XVII. Because his Honor erred in overruling the motion for a new trial on the ground that the verdict was unsupported by the evidence, and in basing his conclusion on the assumption that other places than under the box were in fact more dangerous, obviously, generally, because there he would have been in closer contact with machinery and cog wheels; whereas, the uncontradicted testimony was that the master had provided a place from which to oil the machinery that was convenient and absolutely safe." As is well said in the argument of one of the counsel: "If the Court was right in refusing to grant nonsuit, its refusal to grant a new trial cannot be reviewed by this Court." If there is any evidence sustaining the verdict, refusing to grant a new trial will not be disturbed. *Garrett* v. *Weinberg,* 59 S. C., 162, 37 S. E., 51; *Jones* v. *Hiers,* 57 S. C., 429, 35 S. E., 748. This exception is overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.