**UNITED STATES of America,**
**Plaintiff,**

v.

**Dote LYNN, Defendant.**

United States District Court
E. D. Kentucky at Frankfort.
June 28, 1955.

Henry J. Cook, U. S. Atty., B. Robert Stivers, Asst. U. S. Atty., Lexington, Ky., for plaintiff.

John M. Berry, Donald K. Floyd, Newcastle, Ky., for defendant.

FORD, Chief Judge.

This is an action by the United States for the recovery of the penalty for the marketing of tobacco in excess of the marketing quota fixed for the defendant's farm on which the tobacco was produced in 1953 as prescribed by the Agricultural Adjustment Act of 1938, as amend-

ed 7 U.S.C.A. § 1314 et seq., jurisdiction of which is conferred by section 376 of the Act, 7 U.S.C.A. § 1376.

At the conclusion of testimony on behalf of the United States, the defendant made a motion for judgment on the proof offered by the plaintiff.

In my opinion the defendant's motion for dismissal of the complaint for lack of proof of excess acreage should be sustained. The evidence is insufficient to show to my satisfaction that the acreage cultivated in tobacco by the defendant in 1953 was in excess of the defendant's acreage allotment, which was 7.7 acres.

The evidence shows that in May 1953, a short time before the defendant's tobacco crop was set out, the defendant requested Mr. Salin Holbert to measure the area which he proposed to cultivate in tobacco in that year, in order that he might limit his acreage to conform to his allotment. Mr. Holbert had had considerable experience under employment by the Owen County P.M.A. Committee in measuring tobacco lands and at the request of the defendant he did measure the land which defendant pointed out as that which he proposed to cultivate for his 1953 tobacco crop, and after measuring the proposed area, Mr. Holbert indicated to the defendant the area to be cultivated in tobacco in order to conform with his acreage allotment. After the defendant's tobacco crop was set out, at the direction of and under the employment of the County Committee Mr. Holbert again went upon the area which was in cultivation in tobacco by the defendant and found that the area growing in tobacco was the same which he had previously measured and which contained, according to his measurement, 7.62 acres. He made his report to the County Committee accordingly. His report was duly accepted by the County Committee and the defendant was so notified. Thereafter the County Committee issued and delivered to the defendant a "Within Quota Marketing Card", sometimes referred to as "White Card", which authorized him to market his tobacco crop under the tobacco marketing pro-

gram without penalty. The defendant proceeded to harvest and market his crop and he and his tenants received and divided the proceeds.

No further action was taken in regard to defendant's tobacco until in March 1954, when, at the direction of the State P.M.A. Committee, Mr. Charles E. Turner, who held a clerical position in the office of the State P.M.A. Committee, went to the defendant's farm and, according to his testimony, measured the tract in question. Mr. Turner then reported the result of his measurement to be that the area raised by the defendant in tobacco during the year 1953 embraced 10.6 acres, and with his report he filed a plat which is not drawn to scale. He did not have in his possession and did not produce in evidence his computation of the acreage he claimed to be shown by his plat or by his method of measurement.

■ The Government introduced proof, and it is undisputed, that the total production, as shown by the defendant's marketing cards, for 1953 amounted to 19,570 pounds. No evidence is introduced, however, to show that this total production was in excess of the average per acre production in the community. No witness was able to say what the average production per acre was in that community in 1953, or in any other year. Consequently, mere proof of the total production does not serve to sustain plaintiff's claim of excess acreage.

The defendant is charged with neither fraud nor bad faith.

■ The burden rested upon the plaintiff to establish that defendant's tobacco acreage cultivated in 1953 was in excess of his acreage allotment. From this conflicting evidence introduced by the Government I find that plaintiff has failed to sustain the burden of proof resting upon it.

Pursuant to the provisions of the Agricultural Adjustment Act of 1938, 7 U.S. C.A. § 1375, the Secretary of Agriculture issued Instructions No. 1006 governing procedure for determining 1953 acreage and performance, which are filed herein as Exhibit No. 2. Sub-paragraph A.3.

of Paragraph III of the Instructions provides that the State Committee shall be responsible for

"Making timely and adequate inspection and spot check of the work in each county to insure that it is being done promptly."

Sub-paragraph B.5.–6. of Paragraph III provides that the County Committee, under the supervision of the State Committee, shall be responsible for

"Reviewing and spot checking the work of each committeeman and reporter within one week after beginning work and making such additional spot checks as are necessary to insure accurate measurements", and

"Making and forwarding progress reports to the State Committee."

Paragraph VI, so far as here pertinent, provides:

"The acreage determined in the county office from measurements made in the field by the community committeeman or reporter will be considered final unless a redetermination is made by the State or county committee because:

"1. The State or county committee finds the report not acceptable, or

"2. The redetermination is requested by the farm operator."

Article 725.443 of Regulation No. 1026 governing market quota regulations for the marketing year 1953–54, filed herein as Exhibit No. 1, makes the following provision under which a farmer who inadvertently or otherwise cultivates an acreage of tobacco in excess of his acreage quota may save himself from imposition of the heavy penalties provided by the Act:

"725.443 Disposition of Excess Tobacco. The farm operator may elect to give satisfactory proof of disposition of excess tobacco prior to the marketing of any tobacco from the farm by either of the following methods:

"(a) By storage of the excess tobacco * * *

"(b) By furnishing to the county committee satisfactory proof that excess tobacco representative of the entire crop will not be marketed."

It seems obvious that for the State Committee to defer remeasurement of the area cultivated in tobacco until long after the farmer has harvested and marketed his crop, as was done in this case, necessarily results in denying the farmer the opportunity to protect himself from penalty by the means thus provided. Such action so long delayed is neither timely nor prompt, as required by the instructions above set out, and the delayed measurement made as shown in this case was unauthorized for the reason that under the provisions of the instructions above set out the acreage determined in the county office from measurements made in the field by Mr. Holbert, the reporter, had long since become final and not subject to challenge.

■ It seems clear that under the regulations and instructions promulgated pursuant to the Agricultural Adjustment Act of 1938, as amended, the authority of the State and County Committees to remeasure tobacco acreage with a view to imposing penalties is limited to the period prior to the time the tobacco crop is marketed, and that a measurement deferred until after that time is ineffective to warrant imposition of penalty. Otherwise, every producer of tobacco would remain indefinitely under the hazard of having penalties imposed upon him without the opportunity to dispose of excess tobacco as provided by Regulation 725.443.

■ In view of the recognized rule that subsequent legislation may be considered to assist in the interpretation of prior legislation upon the same subject, Great Northern Ry. Co. v. United States, 315 U.S. 262, 277, 62 S.Ct. 529, 86 L.Ed. 836, it seems pertinent to call attention to the 1954 Amendment to the Agricultural Adjustment Act of 1938, 68 Stat. 904, by which Congress added the following paragraph to section 374 of the Act, 7 U.S.C.A. § 1374:

"(c) If the acreage determined to be planted to any basic agricultural commodity on the farm is in excess of the farm acreage allotment, the Secretary shall by appropriate regulations provide for a reasonable time prior to harvest within which such planted acreage may be adjusted to the farm acreage allotment."

For the reasons indicated I am of the opinion that plaintiff's claim asserted in the complaint should be denied and the complaint should be dismissed.